IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD J. DOUGHERTY and  :
HENRIETTA D'AGOSTINO  :
  :  CIVIL ACTION
        v.  :
  :  NO. 14-2262
VFG, LLC f/k/a VOYAGER FINANICAL  :
GROUP, LLC, ET AL.  :

## MEMORANDUM

**SURRICK, J.**                                                    **JULY <u>28</u>, 2015**

Presently before the Court is the Motion for Reconsideration filed by Defendant, Cetera Financial Specialists, LLC, as successor by merger to Genworth Financial Securities Corporation ("Cetera").  (ECF No. 16.)  For the following reasons, the Motion for Reconsideration will be granted.

## I.    BACKGROUND

This is a securities related action involving the marketing, sale, and purchase of certain fixed-income pension stream securities.  Prior to removal to this Court, Cetera moved to compel Plaintiffs to arbitrate their claims against Cetera and its registered representative, Defendant John T. Oates, Jr., pursuant to an arbitration agreement and securities industry rules.  Plaintiffs agreed with Cetera's request.  Oates, a non-signatory to the arbitration agreement, objected to the request.  The Court of Common Pleas of Bucks County, Pennsylvania denied Cetera's Motion without opinion.  Cetera now moves for reconsideration of the state court's Order.

### A.    Factual Background

On or around October 26, 2006, Plaintiff Edward Dougherty opened a securities account with Genworth Financial Securities Corporation (the predecessor to Cetera).  (Securities Account

Form, Cetera's Mot. Ex. "B," ECF No. 16.)  From March 2011 through 2012, Edward Dougherty

invested in eight fixed-income pension stream securities in a total sum of $1,465,693.69.

(Compl. ¶ 12, Notice of Removal Ex. "B," ECF No. 1.)  In April 2011, his mother, Plaintiff

Henrietta D'Agostino, invested in one fixed-income pension stream security in the sum of

$49,452.89.  (*Id*. ¶ 13.)  The specific securities purchased by Plaintiffs were civil service,

military, and private corporate pensions, purchased from a pensioner for a lump-sum payment in

return for the receipt of the monthly pension checks.  (*Id*. ¶¶ 23-27.)

The Plaintiffs obtained their investments through Defendant VFG, LLC, f/k/a Voyager

Financial Group, LLC ("Voyager").  (*Id*. ¶¶ 12-13.)  Oates was the registered representative of

Cetera at all times material.  (*Id*. ¶ 6.)  Plaintiffs purchased the securities at issue based upon

recommendations made by Oates.  (*Id*. ¶¶ 12-13, 15-16.)

Plaintiffs allege that they have not received all monthly payments promised.  (*Id*. ¶ 29.)

They also allege that many payments have not been timely received, that the securities purchased

have attributes different from what was promised (including alleged illegality under 38 U.S.C.

§ 5301), and that the securities carry a far greater risk than what was represented.  (*Id*. ¶¶ 15-17,

29.)

**B.     Procedural Background**

Plaintiffs filed this action on March 13, 2013, in the Court of Common Pleas of Bucks

County, Pennsylvania.  In addition to Cetera, Voyager, and Oates, Plaintiffs also named Andrew

P. Gamber, Jonathan Sheets, Bruce A. Braverman, Vantage Point Bank, and Main Line

Guarantee as Defendants.  Plaintiffs bring the following causes of action, all sounding in state

law:  violation of the Arkansas Security Act, Ark. Code Ann. § 23-42-101 *et seq*.; violation of

the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq*.; violation of the

Pennsylvania Securities Act, 70 Pa. Stat. § 1-101 *et seq*.; violation of the Pennsylvania Unfair

Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq*.; breach of

contract; fraud; negligent misrepresentation; negligent supervision; breach of fiduciary duty; and

civil conspiracy and/or aiding and abetting.  (Compl. Counts I-X.)

On August 28, 2013, Cetera moved to stay the action as to Plaintiffs' claims against

Cetera and Oates, and to compel Plaintiffs to arbitrate those specific claims only.  (Cetera's Mot.

5.)  Plaintiffs agreed to arbitrate their claims against Cetera and Oates.  Oates opposed the

compulsory arbitration.  (*Id*.)  By Order dated March 21, 2014 (and entered on March 28, 2014),

the state court denied, without opinion, Cetera's Motion.  (*Id*.; *see also id*. at Ex. "C.")  On April

16, 2014, Cetera timely appealed the state court's Order to the Superior Court of Pennsylvania.

On February 28, 2014, during the pendency of Cetera's Motion in the state court, the

Commonwealth of Pennsylvania Department of Banking and Securities closed Vantage Point

Bank.  (Notice of Removal ¶ 1.)  The FDIC was appointed as Receiver for Vantage Point Bank.

(*Id*.)  On April 9, 2014, the FDIC-Receiver was substituted for Vantage Point Bank as the real

party in interest to this litigation.  (*Id*. ¶ 6.)  The FDIC-Receiver then removed the action to this

Court on April 18, 2014, pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1441(a).  Due to

the removal of this case, the Superior Court of Pennsylvania dismissed Cetera's appeal.  (Pls.'

Reply Mem. of Law 2, ECF No. 31.)

Immediately following removal to this Court, the FDIC-Receiver moved to stay this

action pending the completion of a mandatory administrative claims process under 12 U.S.C.

§ 1821(d).  (FDIC-Receiver Mot. to Stay, ECF No. 2.)  On May 7, 2014, the FDIC-Receiver's

Motion was granted, and this action was placed in civil suspense for a period of 180-days,

retroactive to April 14, 2014.  (Order, ECF No. 5; *see also* FDIC-Receiver Status Report, ECF

No. 10.)  On October 28, 2014, at the conclusion of the 180-day period, Cetera filed the instant

Motion for Reconsideration.  This action was officially removed from civil suspense by Order

dated October 30, 2014.  (ECF No. 17.)[1]

## II.     LEGAL STANDARD

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact

or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.

1985), *cert. denied*, 476 U.S. 1171 (1986).  "[R]econsideration is justified in extraordinary

circumstances such as where: (1) there has been an intervening change in the law; (2) new

evidence has become available; or (3) reconsideration is necessary to prevent clear error or a

manifest injustice."  *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir.

1999) (citing *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998)).

## III.    DISCUSSION

Cetera argues that Plaintiffs must be compelled to arbitrate their claims against Cetera

and Oates.  Plaintiffs agree, independently making their own request to compel arbitration.

Oates objects.  He argues that Cetera's Motion is untimely.  He also argues that the Motion does

not provide a sufficient justification to warrant reconsideration, and reversal, of the state court's

Order.

### A.       Timeliness of the Motion for Reconsideration

Oates first argues that Cetera's Motion should be denied as untimely.  He contends that

Cetera failed to abide by this Court's Local Rule of Civil Procedure 7.1(g).  The Local Rule

requires motions for reconsideration to be filed within 14 days after entry of the order at issue.

---

[1] The case was reassigned to this Court on February 4, 2015.  (ECF No. 49.)

Cetera responds that specific intervening acts—the FDIC-Receiver's removal of this case from state court and the stay Order of May 7, 2014—nullify any argument of untimeliness.

The Federal Rules of Civil Procedure do not apply to an action prior to its removal to the District Court.  *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action *after* it is removed from a state court.") (emphasis added); *Housing Auth. of City of Jersey City v. Jackson*, 749 F. Supp. 622, 627 n.6 (D.N.J. 1990) ("[T]he federal rules of civil procedure 'do not apply to the filing of pleadings or motions prior to removal.'") (quoting *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir. 1987)); *see also Instituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Prod., Inc.*, 47 F.R.D. 310, 312 (S.D.N.Y. 1969) ("Only pleadings filed subsequent to removal must conform to the requirements of the federal rules."); *Geist v. Prudential Ins. Co. of America*, 35 F. Supp. 790, 791 (E.D. Pa. 1940).  And the Local Rules of this Court—for example, Rule 7.1(g)—have no applicability to an action while it is pending in state court prior to removal.

The state court's Order was entered on the docket on March 28, 2014.  Removal to this Court did not occur until 21 days later, on April 18, 2014.  During that interim time period, Local Rule 7.1 had no applicability to this case—*the case remained in state court*.  Since Local Rule 7.1 did not apply during that time period, Cetera was not required to file a motion for reconsideration within 14 days of March 28, 2014.[2]

Applying Local Rule 7.1 in this instance presents a problem because the time period prescribed in the Rule expired before the case was removed to this Court.  The Local Rule does not speak to when an order at issue was entered by a state court, and in such an instance when the 14-day time period begins to run.  This difficulty has been noted before.  *See Vigilante v.*

---

[2] Oates does not cite to, and indeed we are unaware of, any Pennsylvania state rule or local rule of the Court of Common Pleas of Bucks County similar to our Local Rule 7.1(g).

*Statharos*, No. 08-3408, 2009 WL 414014, at *2 (E.D. Pa. Feb. 16, 2009). The Third Circuit previously addressed this situation, in the context of a party seeking relief, after removal, from a judgment entered by the state court. *See Resolution Trust Corp. v. Nernberg*, 3 F.3d 62 (3d Cir. 1993). In *Resolution Trust*, the court noted that there was no procedural rule specifying a time period to file for reconsideration in federal court after removal, and "[i]n the absence of applicable procedural rules, we must give some direction to the district courts to cope with the removal cases." *Id*. at 68. Therefore, the court adopted a rule providing that motions for reconsideration are to be filed within 30 days after removal. *Id*.

Even though *Resolution Trust* was decided in the context of providing relief from a judgment, and the court envisioned that motions applicable under its rule "are those in the nature of proceedings under Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or those seeking to reopen," *id*. at 69, we see no reason why the court's reasoning should not apply here. There is no rule providing for a time period for Cetera to file its Motion in this instance. And *Resolution Trust* did not limit its holding solely to motions seeking relief from a judgment. Accordingly, we conclude that Cetera had 30 days from the date of removal to file its Motion. The stay entered on May 7, 2014 complicates the calculation of those 30 days. Nevertheless, Cetera had the opportunity to file its Motion between removal on April 18 and the entry of the stay on May 7. The clock began again once the stay expired 180 days later. There is no dispute that Cetera filed its Motion immediately upon the expiration of the stay. This occurred while that 30-day window remained open. Cetera's Motion is therefore timely.

If Local Rule 7.1 were to apply here, untimeliness *could* serve as a reason for denial. However, where sufficient grounds exist to consider the motion on the merits, denial is not automatic. It is well-settled that a District Court has the inherent power to depart from its Local

Rules where "(1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *United States v. Eleven Vehicles, Their Equip. & Accessories,* 200 F.3d 203, 215 (3d Cir. 2000). Indeed, in the context of timeliness under Local Rule 7.1(g), strict adherence to the 14-day time period is routinely excused where the circumstances warrant it. *See, e.g., United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. 06-3213, 2013 WL 5924962, at *7-8 (E.D. Pa. Nov. 5, 2013) ("[T]he Court has a sound rationale for departing from Rule 7.1(g): correction of a clear legal error."); *Szostek v. Drexel Univ.*, No. 12-2921, 2013 WL 6667746, at *2 (E.D. Pa. Dec. 18, 2013); *see also* Peter J. Vaira, Federal Practice Rules Annotated, Comment on Rule 7.1 at 103-04 (Gann 2014 ed.) (collecting cases).

The circumstances present here warrant a departure from the time requirement of Local Rule 7.1. Between the entry of the Order on March 28, 2014 and Cetera's filing of the instant Motion, Cetera manifested its intention to seek review of that Order on a timely basis and in accordance with applicable rules. On April 16, 2014, prior to removal, Cetera took an appeal from the state court's Order. This appeal was perfected within 30 days of March 28, in accordance with Pennsylvania Rule of Appellate Procedure 903. Subsequently, the case was removed to this Court and placed in civil suspense, retroactive to April 14, 2014. Immediately upon the case being removed from civil suspense, Cetera filed the instant Motion.

At every point between the entry of the state court's Order and the filing of the instant Motion, Cetera complied with each applicable rule on a timely basis. It should not be penalized. Failing to consider Cetera's Motion would leave it with no recourse from the state court's Order. Cetera's appeal in state court was mooted by removal to this Court, and there is no procedural means for Cetera to seek review in the Third Circuit. Furthermore, we are satisfied that the state

court's Order constitutes a clear error of law, as will be discussed *infra*.  This situation warrants

consideration of the Motion on the merits.  *Galmines*, 2013 WL 5924962, at *7-8.  Therefore,

based upon Cetera's timely attempt to seek review of the state court Order, and because the

Order constitutes a clear error of law, a sound rationale exists to depart from a strict

interpretation of Local Rule 7.1(g).[3]  We will therefore consider Cetera's Motion timely and

consider it on the merits.

### B.  Appropriateness of Reconsidering State Court's Order

Having determined that Cetera's Motion is timely, we turn to the question of whether the

state court's decision binds this Court.  In short, it does not.

"After removal, the federal court 'takes the case up where the State court left it off.'"

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda*

*Cnty.*, 415 U.S. 423, 436 (1974) (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1880)).  In the

general sense, a decision of a state court prior to removal constitutes the "law of the case."  *See*

*Cobb v. George Weston Bakers Distrib., Inc.*, No. 10-676, 2012 WL 2344452, at *3 (D.N.J. June

19, 2012).  The "law of the case" doctrine "expresses the practice of courts generally to refuse to

open what has been decided."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817

(1988).  However, the doctrine is not inflexible.  A court "has the power to revisit prior decisions

of . . . a coordinate court in any circumstance, although as a rule courts should be loathe to do so

in the absence of extraordinary circumstances such as where the initial decision was 'clearly

erroneous and would work a manifest injustice.'"  *Id.* (quoting *Arizona v. California*, 460 U.S.

---

[3] Even though the Third Circuit also requires an analysis into whether departure from the
Local Rule "does not unfairly prejudice a party who has relied on the local rule to his detriment,"
*Eleven Vehicles*, 200 F.3d at 215, no party here has relied on any Local Rule.  Moreover, we do
not see prejudice befalling any party by departing from Local Rule 7.1(g).  However, manifest
prejudice would clearly befall Cetera if we were to strictly adhere to the Rule and deny the
Motion as untimely.

605, 618 n.8 (1983)); *see also Johnsen v. Burken*, 930 F.2d 1202, 1207 (7th Cir. 1991) ("law of the case" doctrine did not bar federal court from revisiting decision of the state court prior to removal); *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40-41 (2d Cir. 1980) (same).

We do not have the benefit of the rationale for the state court's decision.  We can assume that the state court, presented with full briefing on this issue, simply found Oates' arguments to be more persuasive.  Under normal circumstances, we would be reluctant to reconsider an issue that was fully briefed and decided by the state court.  However, we would not be fulfilling our own duty if we were to blindly assume that the state court decision was correct.  We will therefore conduct an independent analysis of the issue presented.

## C.  Whether Oates is Subject to Compulsory Arbitration

Turning to the question of whether Plaintiffs and Cetera can compel Oates to submit to arbitration, this matter is unique in that two distinct questions are presented, either of which answered in the affirmative would bind Oates to arbitration.  Plaintiffs present the question of whether a customer may compel his brokerage firm's registered representative to submit to arbitration pursuant to a securities industry application and applicable rules.  Cetera presents the question of whether a principal may compel its agent to submit to arbitration, pursuant to an agreement between the principal and a customer, to resolve the customer's claims against both the principal and agent.  Oates did not respond to the first question.  He presents a straightforward response to the second question:  that he is not a party to the agreement and may not be bound by its terms.

### 1.  *The Sources to Compel Oates to Submit to Arbitration*

Addressing first the various sources proffered by Plaintiffs and Cetera to compel Oates to submit to arbitration, Plaintiffs proffer Oates' signed Form U-4 and the rules promulgated by the

Financial Industry Regulatory Authority, Inc. ("FINRA") as sources to compel arbitration.

Cetera relies upon the Securities Account Form.

To become registered to sell securities, Oates was required to complete a Form U-4.[4]

That Form provides, *inter alia*:

> 15A.  INDIVIDUAL/APPLICANTS ACKNOWLEDGEMENT AND CONSENT
>
> . . .
>
> 5.      I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Oates' Form U-4, § 15A, Pls.' Resp. Ex. "D.")  The Form U-4 included an addendum titled

"Employment Arbitration Disclosure," which provides:

> Please read and acknowledge with your signature, the following <u>Employment Arbitration Disclosure</u>.  This form must accompany every new associated person's Form U-4 and all Form U-4 amendments.
>
> The Form U-4 contains a predispute arbitration clause.  It is Item 15A, question 5. You should read that clause now.  Before signing the Form U-4, you should understand the following:
>
> 1.      You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering.  This means you are giving up the right to sue a member, customer or other associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

---

[4] To sell securities, Oates was required to register with a self-regulating organization ("SRO"), approved by the Securities and Exchange Commission.  "Registration with the SRO entails, *inter alia*, completing a Form U-4.  The form is titled 'uniform application for securities industry registration or transfer.'"  *Marciano v. MONY Life Ins. Co.*, 470 F. Supp. 2d 518, 523 (E.D. Pa. 2007).

(*Id.* at "Employment Arbitration Disclosure.")  The SROs that Oates sought registration with included the National Association of Securities Dealers ("NASD").  (*Id.* at § 4.)  Oates signed both the Form U-4 and the Employment Arbitration Disclosure.

Plaintiffs also argue that applicable SRO rules require Oates to submit to arbitration. Self-regulatory organizations, like the NASD referenced in Oates' Form U-4 application, promulgate rules that govern its member firms and their associated persons.  FINRA is the successor to the NASD.[5]  Relevant here, the FINRA Rules provide:

> Parties must arbitrate a dispute under the [FINRA Customer] Code if:
>
> • Arbitration under the Code is either:
>
>> (1)  Required by a written agreement, or
>>
>> (2)  Requested by the customer;
>
> • The dispute is between a customer and a member or associated person of a member; and

---

[5] FINRA is "a national association of securities broker-dealers registered with the Securities and Exchange Commission ("SEC") under § 15A of the Exchange Act, 15 U.S.C. § 78o-3.  In 2007, NASD changed its name to [FINRA]."  *Siegel v. S.E.C.*, 592 F.3d 147, 14 n.1 (D.C. Cir. 2010).  FINRA is a self-regulatory organization "and has the authority to, *inter alia*, create and enforce rules for its members in order to provide regulatory oversight of all securities firms that do business with the public."  *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks and citation omitted).  "FINRA membership constitutes an agreement to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein."  *In re American Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (internal quotation marks and citation omitted).  All rules and regulations promulgated by FINRA are approved by the SEC.  *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999); *see also* 15 U.S.C. § 78s(b).  "Securities arbitration cases filed on or after August 6, 2007, are administered by [FINRA], using the NASD Customer Code . . . Although NASD had changed its name to FINRA, it continued to conduct arbitrations governed by NASD Code of Arbitration Procedure."  1 DOMKE ON COMMERCIAL ARBITRATION § 23:30 (3d ed.).  To the extent this Memorandum and/or cited case law refers to the "FINRA Rules" or the "NASD Rules," the terms are used interchangeably.

> • The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200.

Cetera argues that the Securities Account Form requires Oates to submit to arbitration.

That Form contains an arbitration provision, which provides as follows:

> 10.   Agreement to Arbitrate Controversies
>
> THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
>
> . . .
>
> Any controversy (including, but not limited to, those involving any transaction; or the construction, performance, or breach of this or any other agreement) between you and us, whether entered into on, or subsequent to, the date hereof, shall be submitted to arbitration before the National Association of Securities Dealers, Inc. ("NASD") and in accordance with its rules.

(Securities Account Form, Terms and Conditions ¶ 10.)  The terms "you" and "us" are defined: "you" refers to "any person executing [the Securities Account Form]"; and "us" refers to "Genworth Financial Securities Corporation, and its affiliates and agents."  (*Id.* at ¶ 3.)  Plaintiffs executed this agreement.  Oates signed the agreement as the "registered representative"[6] who confirmed the validity of Plaintiffs' photo identification.

### 2.   *The Law Governing this Dispute*

Addressing next the law that will govern resolution of the questions presented, Cetera filed both its original Motion to compel arbitration, and the instant Motion, under the Pennsylvania Uniform Arbitration Act, 42 Pa. Con. Stat. § 7301 *et seq*.  Oates implicitly agrees,

---

[6] "Registered representative" is a term of art, which refers to "a person who has passed an examination administered by FINRA and obtained a license to solicit, purchase, and sell securities while working with a member firm of FINRA."  *Cody v. S.E.C.*, 693 F.3d 251, 254 (1st Cir. 2012).

basing his arguments on Pennsylvania law.  Plaintiffs, however, contend that the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., controls.

Section 2 of the FAA governs "[a] written provision in any . . . contract evidencing a

transaction involving commerce to settle by arbitration a controversy thereafter arising out of

such contract . . . ."  9 U.S.C. § 2.  The language "involving commerce" is interpreted to

"signal[] an intent to exercise Congress' commerce power to the full."  *Allied-Bruce Terminix*

*Co., Inc. v. Dobson*, 513 U.S. 265, 277 (1995).  The reach of the FAA is broad.  "Because the

statute provides for the enforcement of arbitration agreements within the full reach of the

Commerce Clause, it is perfectly clear that the FAA encompasses a wider range of transactions

than those actually 'in commerce'—that is, within the flow of interstate commerce."  *Citizens*

*Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (internal quotation marks and

citations omitted).  Therefore, applying Commerce Clause jurisprudence, the FAA may be

applied to "individual cases without showing any specific effect upon interstate commerce if in

the aggregate the economic activity in question would represent a general practice subject to

federal control.  Only that general practice need bear on interstate commerce in a substantial

way."  *Id*. at 56-57 (internal quotation marks and citations omitted).

The parties here are residents of different states:  Plaintiffs and Oates are residents of

Pennsylvania; Cetera is a resident of Delaware.  (Compl. ¶¶ 1, 5-6.)  The securities at issue here

were marketed and sold through a "nationwide network" facilitated by Voyager, a resident of

Arkansas.  (*Id*. ¶ 26 & Ex. "A.")  And certain of the securities at issue were pensions issued by

the States of Connecticut and Ohio, purchased by wiring funds through a bank located in New

Jersey.  (*Id*. Ex. "C.")  Based upon these facts, there is no doubt that the marketing and purchase

of the securities at issue "bear on interstate commerce in a substantial way."  *Citizens Bank*, 539

U.S. at 57.  Thus, the FAA and "federal law, including general principles of contract law" will

apply "regarding the construction and enforcement of [the] arbitration clause."  *Medtronic AVE,*

*Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001).

### 3. The Form U-4 and FINRA Rules Requiring Arbitration

Plaintiffs offer grounds to compel Oates to arbitration independent from those offered by

Cetera, namely the Form U-4 and FINRA Rule 12200.  They are the parties asserting claims

against Oates.  We will therefore address the grounds offered by Plaintiffs first.

Since the FAA applies, the threshold inquiry "is to determine, under recognized

principles of contract law, the validity of, and the parties bound by, the arbitration agreement."

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 228 (3d Cir. 1998).  None of

the parties here challenge the validity of the arbitration agreement executed by Oates in the Form

U-4, or the arbitration provision contained in the FINRA Rules.  Our analysis therefore turns to

whether Plaintiffs may invoke the benefits of these arbitration provisions.

Generally, "arbitration is a matter of contract and a party cannot be required to submit to

arbitration any dispute which he has not agreed so to submit."  *AT&T Tech. v. Commc'n Workers*

*of Am.*, 475 U.S. 643, 648 (1986).  "The identification of the parties bound by the agreement to

arbitrate need not be confined to the limited inquiry of identifying the signatories to the

arbitration agreement.  Rather, the dispositive finding is an express and unequivocal agreement

between parties to arbitrate their disputes."  *In re Prudential Ins. Co.*, 133 F.3d at 229.  The

Third Circuit has recognized that "a variety of nonsignatories of arbitration agreements have

been held to be bound by such agreements under ordinary common law contract and agency

principles."  *Id*.  And "courts have been willing to apply third party beneficiary law in examining

the contractual standing of a non-signatory party to a dispute, provided there is an expression of the requisite intent between the third party and the plaintiff to arbitrate their claims." *Id.*

There is a strong federal policy favoring arbitration, and "[c]ourts generally apply a presumption in favor of enforcing arbitration clauses." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014).  However, that presumption does not apply in situations such as this, involving a non-signatory to an arbitration agreement.  *Id.*; *see also Citigroup Global Markets, Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014) (noting that "[b]ecause the parties here are disputing the existence of an obligation to arbitrate, not the scope of an arbitration clause, the general presumption in favor of arbitration does not apply."); *Marciano*, 470 F. Supp. 2d at 525-26 ("While there is a presumption that a particular dispute is within the *scope* of an arbitration agreement, there is no such 'presumption' or 'policy' that favors the *existence* of a valid agreement to arbitrate.") (emphasis original) (internal citation omitted).

To determine whether Oates is compelled to submit to arbitration with the Plaintiffs, we begin by analyzing the terms within the Form U-4 and FINRA Rule 12200.  The Form U-4 refers only to "you."  "You," in this context, plainly refers to Oates as the individual signing the document.  FINRA Rule 12200, on the other hand, refers to an "associated person."  This term is defined by the NASD Code (as used by FINRA) as "a natural person who is registered or has applied for registration under the Rules of the Association."  *Marciano*, 470 F. Supp. 2d at 527 (citation omitted).  Courts addressing the issue have found natural persons registered with the NASD, *see id.*, and employees of a brokerage firm (or "member" as used in the Rules) with authority to trade in securities, *see In re Prudential*, 133 F.3d at 229 n.7, to be "associated persons" within the meaning of the term.

According to Oates' FINRA BrokerCheck[7] report, he was at all times material "employed by and registered with" Cetera, a FINRA registered firm.  (Pls.' Resp. at Ex. "B".)  Oates executed Plaintiffs' Securities Account Form as the "registered representative" of Cetera, a term signifying that he is a member of FINRA.  *See supra* at n.6.  And, according to Plaintiffs' Complaint, Oates was an employee of Cetera with authority to trade in securities.  (Pls.' Compl. ¶ 6.)  Based upon these circumstances, Oates is an "associated person" of Cetera within the meaning of the term used in Rule 12200.  Because Oates is an "associated person," and because he executed the Form U-4, he is obligated to submit to arbitration in certain circumstances, as outlined in Rule 12200 and the Form U-4.

One of the circumstances in which Oates is required to submit to arbitration is at the request of a "customer."  Both the Form U-4 and Rule 12200 use the term "customer."  Neither the Form U-4 nor FINRA Rule 12200 offers a thorough definition of the term.  Rule 12200 simply provides "that a customer shall not include a broker or dealer."  *Abbar*, 761 F.3d at 274 (internal quotation marks and citation omitted).  The Second Circuit recently undertook an analysis of the meaning of the term.  In *Abbar*, the court noted that "the word customer must be construed in a manner consistent with the reasonable expectations of FINRA members."  *Id.* (internal quotation marks and citation omitted).  The court also noted that where there is an undisputed purchase of a good or service from a FINRA member, "there is no need for further court proceedings concerning the existence of a customer relationship."  *Id.* at 275 (internal quotation marks omitted).  However, an individual who opens an account with a FINRA member

---

[7] BrokerCheck is a publicly available internet database established and maintained, as required by statute, *see* 15 U.S.C. § 78o-3(i)(1)(B), by FINRA.  *Forgione v. Gaglio*, No. 13-9061, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015).  It provides information on registered representatives, their registration status, and employment history.  The database is available at http://brokercheck.finra.org.

"has a reasonable expectation to be treated as a customer, whether or not goods or services are purchased directly from the FINRA member." *Id.* Accordingly, the court held that a "'customer' under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Id.*

With regard to whether Plaintiffs are "customers," the following is undisputed: Cetera is a member of FINRA; Plaintiffs held an account with Cetera; and Plaintiffs purchased securities from Cetera. Based upon these circumstances, and applying the definition of "customer" in *Abbar* (and indeed by the ordinary usage of the term), Plaintiffs are "customers" as contemplated within Rule 12200 and Form U-4.[8]

The Form U-4 and FINRA Rule 12200 requires an "associated person" to submit to arbitration at the request of a "customer." Oates is an "associated person." Plaintiffs are "customers." Plaintiffs request that Oates submit to arbitration to resolve their dispute. The dispute is between the two. And the dispute between the two concerns the normal business activities of Oates—representations made in the course of the sale of the pension stream securities.[9] Oates is therefore bound to submit to arbitration to resolve the Plaintiffs' claims

---

[8] The Form U-4 does not expressly define the term "customer." Both the Form U-4 and FINRA Rule 12200 do, however, use the term "customer" in the same context. Because the Form U-4 represents an agreement to be bound by the FINRA Rules, the definition of the term "customer" used in FINRA Rule 12200 should be equally applied to the Form U-4.

[9] Oates does not argue that the dispute at issue does not fall within his normal "business activities," as that term is used in FINRA Rule 12200. Where the question of whether the dispute concerns Oates' "business activities" is apparent on the face of the Complaint, the question may be resolved under a Federal Rule of Civil Procedure 12(b)(6) standard. *Sanford v. Bracewell & Guiliani, LLP*, ___ F. App'x ___, 2015 WL 4035614, at *2 (3d Cir. 2015). Here, it is apparent on the face of the Complaint that the dispute concerns representations that he allegedly made to Plaintiffs in the course of their purchase of the pension stream securities. This activity plainly falls within the "business activities" contemplated by Rule 12200.

17

against him pursuant to the Form U-4.  *See, e.g., Pollack v. Laidlaw Holdings, Inc.*, No. 90-5788, 1996 WL 112191, at *4 (S.D.N.Y. Mar. 14, 1996).  He is also bound to submit to arbitration pursuant to FINRA Rule 12200.  *See, e.g., Abbar*, 761 F.3d at 274; *see also* PHILIP J. HOBLIN, JR., SECURITIES ARBITRATION: PROCEDURES, STRATEGIES, CASES § 5-6 (2d ed. 1992) ("Section 12 [of the FINRA Rules] provides that if the matter is eligible under Section 1 and the dispute is between a customer and a member or associated person arising out of the business of the member or the activities of the associated person, and if the customer demands arbitration, it must be arbitrated.").

This conclusion is consistent with the traditional analysis employed in the context of a non-signatory seeking to compel arbitration against a signatory.  Customarily, the issue of non-signatories as parties to an arbitration agreement is analyzed through common principles of contract law, such as third-party beneficiary or equitable estoppel.  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001). As customers to Cetera and Oates, there is no doubt that Plaintiffs are intended third-party beneficiaries of both the Form U-4 and the FINRA Rules.  *See Kidder, Peabody & Co., Inc. v. Zinsmeyer Trusts Partnership*, 41 F.3d 861, 863-64 (2d Cir. 1994) ("[T]he NASD provision constitutes an 'agreement in writing' under the [FAA].  Zinsmeyer is entitled to invoke § 12(a), as an intended third-party beneficiary, in its dispute with Kidder."); *Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Co., Inc.*, 711 F. Supp. 605, 607 (S.D. Fla. 1989) ("As a customer, Scobee is an intended third-party beneficiary who may invoke the NASD compulsory arbitration clause."); *Gilmore v. Brandt*, No. 11-151, 2011 WL 5240421, at *3 n.4 (D. Colo. Oct. 31, 2011) ("So long as Gilmore is found to be a 'customer' . . . the fact that he was not a signatory to the Form U-4 is irrelevant, as he clearly would be an intended third-party beneficiary of [the

registered representative's] agreement to arbitrate."). Furthermore, by executing the Securities

Account Form, Plaintiffs expressly agreed to abide by NASD Rules. (Securities Account Form,

Terms and Conditions ¶ 10.) The NASD Rules are thus incorporated by reference into Plaintiffs'

executed agreement. Incorporation-by-reference is a well-recognized means for Plaintiffs to

invoke the benefits of the arbitration requirement contained within the Rules that Oates agreed to

abide by. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)

(recognizing "incorporation by reference" as a valid theory to bind non-signatories to an

arbitration clause); *Kidder*, 41 F.3d at 864 ("Paragraph 3 of the Customer's Agreement . . .

incorporate[es] the NASD Code by reference. It is well established that an agreement to arbitrate

may be incorporated by reference into a second contract.").

To require Oates to submit to arbitration to resolve Plaintiffs' claims against him and

against Cetera, he must have previously manifested an agreement to submit to arbitration.

*DuPont*, 269 F.3d at 194 ("Arbitration is strictly a matter of contract. If a party has not agreed to

arbitrate, the courts have no authority to mandate that he do so."). As the above analysis shows,

he has done just that. Oates expressly agreed to submit to arbitration through the execution of

the Form U-4. He also expressly agreed to be bound by the FINRA Rules, including Rule

12200, requiring him to submit to arbitration. Oates will be bound by these agreements. The

law is clear that Oates must submit to arbitration in accordance with FINRA Rules to resolve the

Plaintiffs' claims against him and Cetera. Plaintiffs' request to compel Oates to submit to

arbitration under the Form U-4 and FINRA Rule 12200 will be granted.

Since it is clear that Oates is required to submit to arbitration, the state court's March 28,

2014 Order to the contrary represents an error of law. Cetera's Motion for Reconsideration will

therefore be granted, and the state court's Order will be vacated. Because we have resolved the

first question presented in the affirmative, we need not reach the question presented by Cetera of whether the arbitration clause contained within the Securities Account Form binds Oates.

  **D.**  **Stay of this Action Pending Resolution of the Arbitration**

  Having determined that the state court's Order was erroneous, and that Oates must submit to arbitration, we consider the request made by the FDIC-Receiver to stay this action pending resolution of the arbitration.  (FDIC-Receiver Resp., ECF No. 21.)  Pursuant to the FAA, "Section 3 . . . allows litigants already in federal court to invoke agreements made enforceable by § 2.  That provision requires the court, 'on application of one of the parties,' to stay the action if it involves an 'issue referable to arbitration under an agreement in writing.'"  *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (citing 9 U.S.C. § 3).  This case presents "an issue referable to arbitration under an agreement in writing."  Under § 3 of the FAA, we are compelled to grant the FDIC-Receiver's request.  This matter will be placed in civil suspense pending the outcome of the arbitration.

**IV.**  **CONCLUSION**

  For the foregoing reasons, Cetera's Motion for Reconsideration will be granted, the state court Order entered March 28, 2014 will be vacated, and Cetera and Oates will be ordered to submit to arbitration with Plaintiffs to arbitrate Plaintiffs' claims.  Oates' Motion to Dismiss will be dismissed as moot.[10]  The FDIC-Receiver's Motion to Dismiss will be denied, without prejudice to be refiled after the conclusion of the arbitration.  This action shall be placed in civil suspense pending resolution of the arbitration between Plaintiffs and Cetera and Oates.

---

[10] *See Hawkins v. Toussaint Capital Partners, LLC*, No. 08-6866, 2010 WL 2158332, at *5 (S.D.N.Y. May 27, 2010) (denying motion to dismiss as moot after granting motion to compel arbitration pursuant to Form U-4).

An appropriate Order follows.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.